ESTATE OF HANNAH LEVY, DECEASED, EDWARD LEVY, PERSONAL REPRESENTATIVE, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Levy v. Commissioner
Docket No. 30597-88
United States Tax Court
T.C. Memo 1992-12; 1992 Tax Ct. Memo LEXIS 12; 63 T.C.M. (CCH) 1739; T.C.M. (RIA) 92012; January 7, 1992, Filed *12 Peter W. Brown and Ron R. Morgan, for petitioner. Robert A. Varra, for respondent. FAY, Judge. FAY
MEMORANDUM OPINION This matter is before the Court on petitioner's Motion for Award of Reasonable Administrative and Litigation Costs pursuant to section 7430 [1] and Rule 231. As petitioner's above-referenced motion involves only litigation costs, we treat petitioner's above-referenced motion as a Motion for Litigation Costs. Respondent determined a deficiency of $ 558,899 in petitioner's Federal estate tax. On March 1, 1990, the parties filed a Stipulation of Settled Issues in which respondent conceded that there was no deficiency. On March 9, 1990, petitioner filed Petitioner's Motion for Award of Reasonable Administrative and Litigation Costs and Petitioner's Suggestions in Support of Petitioner's Motion for Award of Reasonable *13 Administrative and Litigation Costs. On April 10, 1990, respondent, pursuant to this Court's Order, filed his Response to Petitioner's Motion for Reasonable Administrative and Litigation Costs. Pursuant to this Court's Order, petitioner filed Petitioner's Response to Respondent's Response to Petitioner's Motion for Award of Reasonable Administrative and Litigation Costs on June 4, 1990. Pursuant to this Court's Order, petitioner and respondent filed briefs on November 30, 1990, and on December 4, 1990, respectively. Neither party has requested a hearing, and this Court concludes that a hearing is not necessary for the proper consideration and disposition of the motion. Rule 232(a)(3). Edward Levy, the personal representative of the estate of Hannah Levy, resided in Denver, Colorado, when the petition was filed. Prior to June 26, 1981, Hannah Levy (decedent) owned approximately 48,914 shares (16.6 percent) of the outstanding common stock and approximately 139,463 shares (18 percent) of second preferred stock of Fashion Bar, Inc., a Colorado corporation (Fashion Bar). During this same period, decedent's brother, Jack Levy (Jack), owned approximately 115,164 shares (39.08 percent) *14 of the outstanding common stock and approximately 295,290 shares (38.12 percent) of second preferred stock. On June 26, 1981, both decedent and Jack exchanged all of their common stock for newly issued second preferred stock in a corporate recapitalization (recapitalization), the then existing second preferred stock becoming third preferred stock. In the recapitalization, decedent received 247,748 shares of the second preferred stock, and Jack received 583,304 shares of the second preferred stock. For purposes of the recapitalization, both decedent and Jack valued the second preferred stock they received at $ 10 per share. Also for purposes of the recapitalization, both decedent and Jack valued the common stock given up at $ 50.25 per share. Given these values, the value of the second preferred stock received exceeded the value of the common stock given up, and, therefore, no gift would have been made by either decedent or Jack to the remaining stockholders at the time of the recapitalization. Decedent died on December 1, 1984. On decedent's Federal estate tax return, the second preferred stock received in the recapitalization and held at death was valued at $ 10 per share. *15 On April 6, 1985, approximately four months after decedent's death, Jack died. On his Federal estate tax return, the second preferred stock received in the recapitalization and held at death was valued at $ 7.50 per share. In mid-1987, which was during the early stages of respondent's examination, petitioner furnished respondent with an appraisal of Fashion Bar's common stock. The appraisal had been prepared by Touche Ross & Company at the time of the recapitalization (Touche appraisal). While the Touche appraisal concluded that the value of decedent's common stock just prior to the date of the recapitalization was $ 50.25 per share (plus or minus 10 percent), petitioner did not provide respondent with information regarding the identity, qualifications, and credentials of the individual who prepared the Touche appraisal. More importantly, respondent's examination report dated July 26, 1988, points out certain inadequacies in the Touche appraisal. For example, the examination report points out that, although the Touche appraisal emphasizes the importance of utilizing several methods when valuing stock of a closely held family corporation, the Touche appraisal appears to rely *16 exclusively on a book value approach. [2]
On August 29, 1988, just four days prior to the running of the statute of limitations on assessment of petitioner's Federal estate tax, petitioner provided respondent with a letter of opinion prepared by Marvin L. Stone (hereinafter Stone report). Mr. Stone had been asked to give his opinion concerning whether a gift had been made as a result of the recapitalization. *17 Based upon a review of the Touche appraisal, respondent's examination report, and other relevant documents, Mr. Stone expressed the opinion that no gift had been made at the time of the recapitalization. The Stone report also pointed out certain errors found in respondent's examination report. Mr. Stone verbally pointed out these errors again during a meeting with respondent on September 1, 1988. However, the Stone report is not an appraisal and, therefore, did not address the inadequacies of the Touche appraisal as set forth in respondent's examination report. Further, petitioner did not attach a resume of Mr. Stone to the Stone report so that respondent could evaluate Mr. Stone's credentials. On September 1, 1988, respondent issued a notice of deficiency to petitioner. In this notice of deficiency, respondent determined a deficiency of $ 558,899. This amount is solely attributable to an increase to adjusted taxable gifts. Respondent increased the adjusted taxable gifts because respondent viewed decedent as giving up more than she received in the recapitalization. [3] Respondent argued that, since decedent gave up more than she received, the excess given up inured to the *18 benefit of the shareholders remaining after the recapitalization which included Jack's children and grandchildren and their spouses. Thus, respondent concluded the excess amount constituted a gift. On November 24, 1989, more than one year after the notice of deficiency was issued, petitioner provided respondent with another appraisal, this one prepared by Quist Financial, Inc. (the Quist appraisal). By concluding that the value of decedent's common stock was between $ 43.77 and $ 46.69 as of the date of the *19 recapitalization, the Quist appraisal supports petitioner's position that decedent made no gift. Further, the Quist appraisal utilizes three methods of valuation: Book value, price earnings, and capitalized earnings, attaching a weight to these methods 25 percent, 35 percent, and 40 percent, respectively. The Quist appraisal, however, does not contain an appraisal of the second preferred stock. In fact, petitioner never provided respondent with an appraisal of the second preferred stock. Instead, for purposes of the recapitalization, petitioner ultimately accepted respondent's valuation of the second preferred stock (as determined in the notice of deficiency). On January 10, 1990, respondent filed with this Court Respondent's Motion to Continue the case from this Court's February 20, 1990, Denver, Colorado, Trial Session. After a conference call between the parties and this Court, this Court issued an Order denying Respondent's Motion to Continue. Approximately 3 weeks prior to trial, respondent conceded that no gift was made as a result of the recapitalization. On March 1, 1990, the parties filed a Stipulation of Settled Issues. As part of the stipulation, the parties agreed *20 that, for purposes of the recapitalization, the common stock had a value between $ 43.77 and $ 46.69 per share, and the preferred stock had a value of $ 9 per share. These values resulted in no gift at the time of the recapitalization. The parties also agreed upon a $ 10 per share value for the second preferred stock as of decedent's date of death. The parties in Jack's Federal estate tax case (docket No. 32869-88) agreed upon an $ 8.50 per share value for the second preferred stock as of Jack's date of death. [4]
Section 7430, as amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3746 (applicable to proceedings commenced after November 10, 1988), provides that the prevailing party may be awarded a judgment for reasonable litigation costs incurred in connection with the court proceeding. In general, any party in the proceeding is considered *21 the prevailing party only if it is established that (1) the position of the United States in the proceeding was not substantially justified; (2) the party substantially prevailed with respect to the amount in controversy or with respect to the most significant issue(s) presented; and (3) the party's net worth does not exceed the statutory limits at the time the proceeding was commenced. Sec. 7430(c)(4)(A). However, a judgment for reasonable litigation costs will not be awarded unless we determine that the prevailing party had exhausted the administrative remedies available within the Internal Revenue Service prior to commencing an action in this Court. Sec. 7430(b)(1). Finally, no such costs will be awarded with respect to any portion of the proceeding during which the prevailing party unreasonably protracted such proceeding. Sec. 7430(b)(4). Respondent concedes that petitioner exhausted the administrative remedies available. Thus, the issues remaining are (1) whether respondent's position in the court proceeding was not substantially justified; (2) whether petitioner substantially prevailed; (3) whether petitioner's net worth at the time the petition was filed exceeded the *22 statutory limits; and (4) whether petitioner unreasonably protracted any portion of the proceeding. Petitioner has the burden of proof. Rule 232(e); . For reasons stated below, we find that petitioner failed to prove that respondent's position [5] was unreasonable. [6] Accordingly, petitioner does not qualify as a "prevailing party," and we do not reach the remaining issues. [7]
*23 Since the issue in the court proceeding involved the valuation of Fashion Bar stock, we must begin by reviewing what respondent knew about the stock's value. We find respondent knew that the value of the second preferred stock had been reported at $ 7.50 per share on Jack's Federal estate tax return. Respondent also knew that shares of the second preferred stock had been valued at $ 10 per share just 4 months earlier on decedent's Federal estate tax return and at $ 10 per share 4 years earlier in the recapitalization. Finally, respondent knew the contents of, and the conclusions made within, the Touche appraisal and the Stone report, including the errors pointed out in the Stone report concerning respondent's own examination report. Petitioner argues, given the knowledge of the errors in respondent's own examination report together with the conclusions in the Touche appraisal and Stone report, respondent's adherence to his position that a gift resulted from the recapitalization was unreasonable. [8] We disagree. *24 Since the value of the second preferred stock had not been reported consistently, respondent was not acting unreasonably by further questioning the value of both Fashion Bar preferred stock and common stock. Moreover, it is petitioner, not respondent, who has the burden of proving those values. We agree with respondent that, although the Touche appraisal emphasizes the importance of utilizing several methods when valuing stock of a closely held family corporation, the Touche appraisal appears to rely exclusively on a book value approach in arriving at a $ 50.25 per share value for the common stock. Thus, in arriving at $ 50.25 per share, the Touche appraisal ignores, among other things, earnings capacity. This is despite the fact that the Touche appraisal itself indicates book value is only one of many methods and that earnings capacity was one of 3 very significant methods. Therefore, we find that respondent was not acting unreasonably by refusing to accept the conclusions of the Touche appraisal. While respondent raised these concerns in his examination report, it was not until over one year later that petitioner presented respondent with the Quist appraisal which utilized *25 a multiple method approach. Less than 3 months after receiving the Quist appraisal, respondent conceded that no gift resulted from the recapitalization. We do not find that 3-month period of time unreasonable. Thus, we conclude petitioner has failed to prove that respondent's position was unreasonable at any time during the relevant period. An appropriate order and decision will be entered. Footnotes
1. Except as otherwise provided, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Schedule C of the Touche Appraisal is titled "CALCULATION OF PER SHARE VALUE - CLASS A COMMON." On Schedule C of the Touche Appraisal, the $ 50.25 per share value is calculated as follows: Book value (class A common)
$ 14,800,000
Increase due to undervaluation of assets
(particularly land holdings)
5,000,000
Fair market value (class A common)
$ 19,800,000
Fair market value per share
of Class A common
$ 67.50  Less 25% discount for lack of
marketability
16.75 **
Fair market value of a minority
share of Class A common
$ 50.25 **
** We note minor mathematical inaccuracies in this calculation.↩
3. Respondent valued the common stock decedent gave up in the recapitalization at $ 83.43 per share and the second preferred stock decedent received in the recapitalization at $ 9 per share. Thus, respondent determined that the excess of the aggregate value of common stock given up by the decedent ($ 83.43 multiplied by 48,913.8 shares, or approximately $ 4,080,878) over the aggregate value of the second preferred stock received ($ 9 multiplied by 247,748 shares, or approximately $ 2,229,735) is $ 1,851.143.↩
4. The attorneys of record in this case are the same attorneys of record in Jack's Federal estate tax case (docket No. 32869-88).↩
5. Section 7430(c)(7) applies to proceedings commencing after November 10, 1988. The court proceeding in this case was commenced on November 25, 1988 (the date the petition was filed), and, therefore, "the position of the United States" is defined in section 7430(c)(7)(A). ↩
6. The "substantially justified" standard is not a departure from the "reasonableness" standard applied under section 7430 prior to amendment by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2752. . ↩
7. On October 29, 1990, the Court ordered briefs concerning the issue of whether petitioner substantially prevailed. These briefs were necessary to more clearly define the facts in this case. However, we do not reach the issue of whether petitioner substantially prevailed because we hold petitioner failed to prove respondent's position was, at any time during the relevant period, unreasonable.↩
8. Petitioner cites , and , in support of its argument. These cases, however, are factually distinguishable from this case in that we find the combination Touche appraisal and Stone report insufficient to require respondent to change his position or further investigate the matter. In addition, petitioner argues that, given the knowledge of the errors in respondent's own examination report, respondent's adherence to his position without securing the advice of an expert is evidence of bad faith. Based on the record, however, we cannot conclude that respondent acted in bad faith.↩